SEALED

E-FILED
Monday, 07 April, 2008 04:31:53 PM
Clerk, U.S. District Court, ILCD

AO 91 (Rev. 6/95) Criminal Complaint

# United States District Court



APR 07 2008

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

_____CENTRAL_____ DISTRICT OF _____ILLINOIS_____

UNITED STATES OF AMERICA

v.

TYRONE MAXWELL

**CRIMINAL COMPLAINT**

CASE NUMBER: 08-3017-m

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about **January 9, 2008** in **Adams** County, in the Central District of Illinois, defendant(s) did, (Track Statutory Language of Offense)

**possession with intent to distribute 5 or more grams of cocaine base (crack)**

in violation of **21** United States Code, Section(s) **841(a)(1) and 841(b)(1)(B)**

I further state that I am a(n) **ISP Inspector** and that this complaint is based on the following facts:

**See Attached Affidavit**

Continued on the attached sheet and made a part hereof:    X Yes    No

s/ Lee Mangold

Lee A. Mangold
_____
Name of Complainant

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

April 7, 2008                    at    Springfield, IL
_____          _____
Date                                      City and State

s/ Byron G. Cudmore

Byron G. Cudmore
U.S. Magistrate Judge
_____          _____
Name & Title of Judicial Officer          Signature of Judicial Officer

STATE OF ILLINOIS          )
                           ) ss
COUNTY OF SANGAMON )

### AFFIDAVIT

I, Lee A. Mangold, being first duly sworn, hereby depose and state:

1. I am a Police Officer with the Quincy, Illinois, Police Department, and have been so employed since 1983. I am presently assigned to the Illinois State Police West Central Illinois Drug Task Force and have been so assigned since 2001. I have personally conducted and/or assisted in hundreds of investigations of individuals and organizations deriving income from the unlawful distribution of controlled substances. I have had hundreds of conversations with drug traffickers concerning their methods of operation in the course of investigative interviews and covert activities. I have also participated in the execution of hundreds of search warrants relating to illegal drug trafficking and manufacturing. In addition, I have participated in numerous federal investigations involving the authorized interception of wire communications, in the course of which I have listened to thousands of covertly recorded conversations between dealers revealing their methods of operation, which resulted in the arrest and conviction of narcotics dealers.

2. This affidavit is submitted in support of a complaint charging Tyrone Maxwell, year of birth 1986, with the possession of five grams or more of cocaine base ("crack") with the intent to distribute it, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

3. I am familiar with the following facts based upon my own personal observation

1

and upon information officially supplied to me by other law enforcement agents.

4.    Illinois State Police (ISP) Confidential Source (CS) #07-17047 will be referred to as "CS #1". CS #1 is a paid individual who has conducted controlled purchases at the direction of the Illinois State Police. During these purchases CS #1 accomplished his/her directions with no problems. Additionally, CS #1 has provided intelligence on drug trafficking activities throughout the Quincy, Illinois, area and in many cases this information has been corroborated by information already obtained from other sources. To my knowledge, CS #1 has never provided any inaccurate or false information in the course of his/her cooperation. CS #1 is, therefore, believed to be a reliable source of information.

5.    Illinois State Police (ISP) Confidential Source (CS) #07-18007 will be referred to as "CS #2". CS #2 is an individual who has conducted controlled purchases at the direction of the Illinois State Police in order to benefit an associate facing criminal charges in Adam's County, Quincy, Illinois. During these purchases CS #2 accomplished his/her directions with no problems. Additionally, CS #2 has provided intelligence on drug trafficking activities throughout the Quincy, Illinois, area and in many cases this information has been corroborated by information already obtained from other sources.  To my knowledge, CS #2 has never provided any inaccurate or false information in the course of his/her cooperation.  CS #2 is, therefore, believed to be a reliable source of information.

**RELEVANT EVENTS ON OCTOBER 23, 2007**

6.    On October 23, 2007, I utilized CS #1 to conduct a controlled purchase of crack cocaine from an individual subsequently identified as Maxwell. Prior to this controlled purchase, I searched CS #1's person for contraband or money with negative results for either and then

provided CS #1 with $100.00 is ISP prerecorded funds and placed a video recording device on the CS #1's person.

7. At approximately 1:49 P.M., CS #1 departed the location where he/she had met officers and proceeded to 823 Lind, Quincy, Illinois. At approximately 2:00 P.M. Officer Martin and I met with CS #1 who gave me five small baggies containing suspected cocaine. At this time, the video recording device was removed from the CS #1's person and the CS was searched with negative results for contraband or currency.

8. CS #1 was then debriefed and indicated that when he/she arrived at 823 Lind, Quincy, Illinois, a person subsequently identified as Maxwell took the CS to the side of the building and gave the CS the 5 pieces of crack cocaine in exchange for $100.00. A subsequent review of the events shown on the video recording obtained during this transaction corresponds to the CS's description of the events. Additionally, the video recording provided photographic evidence of Maxwell as being the individual who delivered the crack cocaine to the CS. A subsequent analysis, by the Illinois State Police Forensics Laboratory, of the 5 baggies of crack cocaine obtained during this transaction found that the baggies contained 1.6 grams of cocaine base (crack).

**RELEVANT EVENTS ON JANUARY 3, 2008**

9. On January 3, 2008, Illinois State Police (ISP) Inspector Doug McQuern utilized ISP Confidential Source (CS) #2 to conduct a controlled purchase of crack cocaine from Maxwell. Prior to this controlled purchase Officer Bichsel searched CS #2's person, and Insp. McQuern searched CS #2's vehicle, for contraband or money with negative results for either. Inspector McQuern then provided CS #2 with $100.00 is ISP prerecorded funds.

10. At approximately 2:28 P.M., CS #2 departed the location where he/she had met officers and proceeded to the area of 9th and Lind, Quincy, Illinois. At approximately 2:37 P.M. Insp. McQuern observed CS #2 arrive near the front of 823 Lind, Quincy, Illinois.

11. At approximately 2:42 P.M. Insp. McQuern and Insp. Oliver met CS #2 at a predetermined location. At this location Insp. McQuern received a baggie containing suspected crack cocaine from the CS and searched CS #2's person, and his/her vehicle, for contraband and/or money with negative results for either. CS #2 was then debriefed and indicated that when he/she arrived at 823 Lind, Quincy, Illinois, Maxwell sold the CS the crack cocaine in exchange for $100.00. CS #2 indicated that Maxwell "gave" the CS the crack cocaine by spitting it out of his mouth onto the passenger's seat of the CS #2's vehicle. Insp. McQuern subsequently field tested this exhibit for the presence of cocaine with positive results. Insp. McQuern processed this exhibit into evidence and found it to have a gross weight of approximately 1.8 grams. This exhibit has been sent to the Illinois State Police Forensics Laboratory for further analysis.

**RELEVANT EVENTS ON JANUARY 9, 2008**

12. On January 9, 2008, Illinois State Police Confidential Source (CS) "Smokey Joe" conducted a controlled "buy-walk" of $100.00 worth of crack cocaine from an individual subsequently identified as Jeanette Partain. Prior to this purchase occurring, the CS's person and vehicle were searched with negative results for currency or contraband. During this controlled purchase, the CS drove Partain to a residence located on Chestnut Street, between 10th and 11th streets, Quincy, Illinois, where Partain exited the CS's vehicle and entered the residence. A short time later, Partain returned to the CS's vehicle and they departed the area. Shortly after this, the CS's vehicle was stopped by a Quincy, Police Officer and Adam's County Deputy Tom Pickett.

At the time of the stop, the CS immediately gave Deputy Pickett a corner cut baggie containing suspected crack cocaine. At this time, Partain was taken into custody.

13. After Partain was taken into custody and advised of her Miranda rights, she indicated that she wished to cooperate with authorities. Partain stated that she had gotten the crack cocaine from Tyrone Maxwell and indicated that she had paid Maxwell $100.00 for what she believed to be approximately 1.5 grams of crack cocaine. Deputy Pickett field tested this exhibit and found that it tested positive for the presence of cocaine. This exhibit was subsequently submitted to the Illinois State Police Forensic Laboratory for analysis.

14. Partain was then shown a photo of Maxwell and indicated that the photo showed Tyrone Maxwell and that that was the individual that she had obtained the crack cocaine from. Partain then called Maxwell on a telephone and Deputy Pickett overheard the conversation. Deputy Pickett reported that he heard Partain ask Maxwell if she could get another $100.00 and Maxwell stated that that was fine and to meet him at the Silver Moon Tavern. Maxwell was overheard indicating that there was too much heat at 1021 Chestnut, Quincy, Illinois.

15. Dept. Cathy Carver and ISP Inspector Matt McElfresh then took Partain to the Silver Moon Tavern, near 10th and Chestnut, Quincy, Illinois. Partain got out of this vehicle and was met by Maxwell outside of the tavern. At this time Maxwell, was taken into custody and transported to the Adam's County Sheriff's Department. At the Sheriff's Department, Maxwell was advised of his Miranda Rights and Maxwell stated that he understood his rights and signed a rights waiver form. Maxwell denied delivering crack cocaine to anyone and indicated that Partain had come to him to buy marijuana. Maxwell indicated that he did not have anything hidden on his person.

16.     When Maxwell was subsequently being processed into custody in the jail facility, Correctional Officer Baker observed a piece of a plastic baggie sticking out of the anal area of Maxwell. A search warrant was then obtained for Maxwell's person. After arriving at Blessing Hospital in Quincy, Illinois, Maxwell told Deputy Pickett that he had something in his anal cavity and wanted to get it out. A doctor subsequently retrieved a plastic baggie containing suspected crack cocaine from the anus of Maxwell. Upon retrieval, the doctor immediately relinquished the baggie to Dept. Pickett. Maxwell indicated to Dept. Pickett that the baggie contained approximately 7 grams of crack cocaine and that he had originally had it in his crotch area but had put it in his anus when he was sitting in the Sheriff's office waiting to be interviewed.

17.     Maxwell was then transported back to the Adam's County Sheriff's Department where he advised Dept. Pickett the he had sold 1.5 grams of crack cocaine to Partain earlier that night. Maxwell advised that he knew it was 1.5 grams because he weighed it on a scale. Maxwell told Dept. Pickett that Partain buy's a lot of crack cocaine. Due to bio-hazard concerns,

this plastic baggie was placed into a bottle and submitted to the Illinois State Police lab for analysis.

                                                           s/ Lee Mangold

                                        Lee A. Mangold, ISP Inspector

Subscribed and sworn to before me
April __7__, 2008.

s/ Byron G. Cudmore

BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE

7